UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WILLIAM RANKO, | |
| Plaintiff, | |
| v. | C20-768 TSZ |
| GULF MARINE PRODUCTS CO INC, et al., | ORDER |
| Defendants. | |

THIS MATTER comes before the Court on a motion to dismiss brought by Defendants Gulf Marine Products Co., Inc. ("Gulf Marine") and Edward Lee, docket no. 16. Having reviewed all papers filed in support of, and in opposition to, the motion, the Court enters the following order.

**Background**

In April 2016, Gulf Marine, a seafood processor and wholesaler, offered Plaintiff William Ranko a position as an Outside Sales Manager. First Amended Complaint ("FAC") at ¶¶ 3.1–3.2 (docket no. 15). Plaintiff's offer letter provided that in exchange for his full-time services to Gulf Marine, Plaintiff would receive a $185,000 salary, paid vacation, and health benefits. *Id.* at ¶¶ 3.3–3.4; FAC, Ex. 1 (docket no. 15-1). Plaintiff

ORDER - 1

left his previous employer in order to accept Gulf Marine's offer of employment.  *Id.* at ¶ 3.5.  Gulf Marine also required that Plaintiff locate office space in the Seattle area, execute a lease on behalf of the company, and advance the rent for the Seattle office for the duration of his employment.  *Id.*  Plaintiff fully performed those duties.  *Id.*

Although Gulf Marine hired and treated Plaintiff as an employee, Plaintiff alleges that he was treated as an independent contractor for tax purposes.  *Id.* at ¶¶ 3.6, 3.8.  For the period beginning January 1 through July 1, 2018, Plaintiff alleges he received only a quarter of his originally contracted salary.  *Id.* at ¶ 3.12.  In addition, he alleges Gulf Marine did not make the appropriate payroll deductions and failed to remit Plaintiff's and Gulf Marine's portions of the payroll taxes to the federal government.  *Id.* at ¶ 3.7.  Had Gulf Marine properly classified Plaintiff as an employee, it would have been responsible for 50 percent of the payroll taxes.  *Id.* at ¶ 3.8.  As a result of the misclassification, Plaintiff was responsible for remitting 100 percent of his payroll taxes while employed by Gulf Marine, from 2016 through 2018.  *Id.*  Plaintiff alleges he paid a total of $48,259 out of pocket for Gulf Marine's portion of the payroll taxes, for which he was never reimbursed by Gulf Marine.  *Id.*

In June 2018, Gulf Marine announced that effective July 1, 2018, "all . . . sales personnels [sic] will be on a profit sharing basis—70% for the company and 30% for the Sales Person."  FAC, Ex. 2 (docket no. 15-2 at 1).  Plaintiff never assented to "the unilateral revision of his employment contract," and Gulf Marine never presented Plaintiff with a new contract to sign.  FAC at ¶ 3.10.  After the new plan was

ORDER - 2

implemented on July 1, 2018, Plaintiff continued to perform his duties despite his reduced pay until his resignation on October 2, 2018. *Id.* at ¶¶ 3.11, 3.13.[1]

After Plaintiff unsuccessfully demanded full payment of his original salary, *id.*, in February 2020, he sued Defendants in King County Superior Court. Defendants removed the action to this Court on the basis of diversity. Notice of Removal at ¶¶ 4–6 (docket no. 1); *see* 28 U.S.C. § 1332. On June 19, 2020, Plaintiff filed the FAC, asserting six causes of action against Defendants:

    1. Breach of contract;
    2. Unjust enrichment;
    3. Nonpayment of wages in violation of the Revised Code of Washington;
    4. Filing fraudulent tax information in violation of 26 U.S.C. § 7434;
    5. Equitable relief; and
    6. Attorneys' fees.[2]

FAC at ¶¶ 5.1–10.4 (docket no. 15). Defendants now move to dismiss Plaintiff's claims. Motion to Dismiss (docket no. 16).

**Discussion**

    A.    **Rule 12(b)(6) Standard**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.

---

[1] The FAC mislabels ¶ 3.13 as "¶ 3.11." FAC (docket no. 15 at 4).

[2] The FAC mislabels the sixth cause of action as the "fifth cause of action." FAC (docket no. 15 at 8). Although a claim for attorneys' fees is not a stand-alone cause of action, such fees may be available if Plaintiff prevails on one or more of his other causes of action.

ORDER - 3

Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### B. Breach of Contract

Under Washington law, "[a]n employment contract indefinite as to duration, is terminable at will by either the employee or employer," unless there is an express or implied agreement otherwise or if the employee gives consideration in addition to the contemplated service. *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 219, 233, 685 P.2d 1081 (1984). If an employment contract is terminable at will, an employer may unilaterally modify the terms of employment, so long as the employee receives reasonable notice and the changes apply prospectively. *See Duncan v. Ala. USA Fed. Credit Union, Inc.*, 148 Wn. App. 52, 58, 70, 77–78 & n.100, 199 P.3d 991 (2008) (affirming the trial court's conclusion that an employer could implement a new compensation plan that resulted in lower pay because the parties executed a unilateral, terminable-at-will contract). In *Duncan*, the court reasoned that "[o]f necessity, the greater right in either party to terminate without cause include[s] the lesser right to unilaterally and prospectively modify contract terms." *Id.* at 77 (quoting *MacKenzie Ins. Agencies v. Nat. Ins. Ass'n*, 110 Nev. 503, 508, 874 P.2d 758 (Nev. 1994) (Steffen, J. dissenting)).

However, even if the employment remains terminable at will, an employer must pay contracted benefits "in accordance with the terms of the contract and the intent of the parties." *See Barrett v. Weyerhaeuser Co. Severance Pay Plan*, 40 Wn. App. 630, 633–

ORDER - 4

34, 700 P.2d 338 (1985) (concluding that an at-will employee is entitled to severance compensation, if at all, in accordance with the terms of the employment contract).

Plaintiff does not dispute that he was an "at-will" employee or that "Gulf Marine could have terminated his employment." Response in Opposition to Motion to Dismiss ("Response") (docket no. 17 at 4–7).[3] Indeed, his offer letter was indefinite as to duration. FAC, Ex. 1 (docket no. 15-1); *see Thompson*, 102 Wn.2d at 233. Nor does Plaintiff allege that the parties later modified the at-will nature of his employment status. *See generally* FAC (docket no. 15); Response (docket no. 17); *cf. Thompson*, 102 Wn.2d at 233. Plaintiff nonetheless asserts that Gulf Marine breached the parties' offer letter and other oral agreements by failing to pay Plaintiff (1) his full salary for 2018 and (2) other benefits. FAC at ¶¶ 5.4.–5.5 (docket no. 15). The Court concludes that Plaintiff has failed to plausibly state a breach of contract claim on the ground that Gulf Marine changed his compensation structure in 2018. However, Plaintiff does state a claim for breach of contract on the grounds that Gulf Marine failed to pay him certain amounts and other benefits due under the employment agreement.

To the extent that Gulf Marine's unilateral modification to Plaintiff's pay structure applied prospectively, that action does not constitute a breach of contract as a matter of law because Plaintiff conceded that he was an at-will employee and Gulf Marine gave notice of the new structure. *See id.* at ¶¶ 3.9–3.11, 5.4–5.5; Response (docket no. 17 at

---

[3] The Court may consider Plaintiff's concession that he was an at-will employee, which is entirely consistent with the allegations in his FAC, without converting the Rule 12(b)(6) motion to dismiss into a summary judgment motion. *See Hicks v. PGA Tour*, Inc., 897 F.3d 1109, 1117 (9th Cir. 2018).

ORDER - 5

4–7); *see Duncan*, 148 Wn. App. at 77–78 & n.100; *see also Quedado v. Boeing Co.*, 168 Wn. App. 363, 367, 375, 276 P.3d 365 (2012) (concluding that "without evidence of a promise that modified [the] at-will employment status," the employee could not prevail on his implied contract claim on the ground that he was demoted, resulting in lower pay).

Plaintiff challenges that conclusion on the ground that his employment agreement was both "at-will" and one that created "bilateral obligations."  Response (docket no. 17 at 5–6).  In support of that argument, Plaintiff principally relies on *Warner v. Channell Chem. Co.*, 121 Wash. 237, 208 P. 1004 (1922) and *Ebling v. Gove's Cove, Inc.*, 34 Wn. App. 495, 663 P.2d 132 (1983).  Neither case expressly involved at-will employees.  *See Warner*, 121 Wash. at 239 (involving an employee who was hired under an 18-month employment contract that was subject to renewal); *Ebling*, 34 Wn. App. 495 (silent as to whether the employee was terminable at will); *see also Duncan*, 148 Wn. App. at 75 (clarifying that in *Ebling*, "the court did not address the question of unilateral contracts that are terminable at will," likely because the question was never argued, and noting that the employer treated Ebling as an independent contractor).[4]  In addition, both *Warner* and *Ebling* were decided before Washington's highest court clarified the at-will doctrine.  *See Thompson*, 102 Wn.2d at 233.  Accordingly, the Court rejects Plaintiff's argument that

---

[4] Nor do the other "bilateral contract" cases on which Plaintiff relies involve stipulated at-will agreements. *See, e.g.*, *Flower v. T.R.A. Indus., Inc.*, 127 Wn. App. 13, 23, 27, 111 P.3d 1192 (2005) (concluding that material issues of fact existed on whether the employer promised to employ the employee for a three-year period subject to termination for just cause).

ORDER - 6

Washington courts recognize the existence of a purported at-will, bilateral employment contract that would preclude the employer from changing the terms of that contract.

Nevertheless, Plaintiff also alleges that from January 1 through July 1, 2018,[5] he received only a quarter of his original salary—that is, before Gulf Marine gave notice of, and implemented, the new compensation plan on July 1, 2018.  FAC at ¶¶ 3.11–3.12 (docket no. 15).  If true, Plaintiff's allegations are sufficient to support his claim that Gulf Marine breached the parties' employment contract prior to implementing the new compensation plan.  *Cf. Duncan*, 148 Wn. App. at 76–77 & 78 n.100 (explaining that an at-will employer's unilateral changes may be applied *prospectively*, not retroactively); *see also Barrett*, 40 Wn. App. at 633–34.

Plaintiff further alleges that Gulf Marine failed to provide him with "other benefits" in violation of the offer letter and "the parties' other oral agreements."  FAC at ¶ 5.5 (docket no. 15).  Specifically, Plaintiff alleges that Gulf Marine promised to provide paid vacation and health benefits and to cover 50 percent of his payroll taxes during his employment, but Gulf Marine never did so.  *Id.* at ¶¶ 3.4 3.6–3.8, 5.5; *see* FAC, Ex. 1 (docket no. 15-1); *see also* FAC at ¶ 7.6 (allegation that Plaintiff "is entitled to the payment of benefits," including "social security, medicare, unemployment insurance and workman's compensation").  Those allegations are also sufficient to assert a breach of

---

[5] It is unclear to the Court whether ¶ 3.12 of the FAC alleges the correct dates, as Plaintiff asserts that it was Gulf Marine's "unilateral change[] . . . from a salary to a commission" on July 1, 2018, which constituted a "significant change in [Plaintiff's] wages from what he contracted for," rather than this earlier time period.  Response (docket no. 17 at 2).

1  contract claim. Accordingly, the motion to dismiss this cause of action is DENIED in
2  part and GRANTED in part.

3        **C.**     **Unjust Enrichment**

4        "Unjust enrichment is the method of recovery for the value of the benefit retained
5  absent any contractual relationship because notions of fairness and justice require it."
6  *Young v. Young*, 164 Wn.2d 477, 484, 191 P.3d 1258 (2008) (en banc); *Bailie Commc'ns,*
7  *Ltd. v. Trend Bus. Sys., Inc.*, 61 Wn. App. 151, 159–160 (1991) (listing the elements of an
8  unjust enrichment claim).

9        For the reasons discussed above, Plaintiff's breach of contract claim and this
10 related unjust enrichment claim is dismissed. However, Plaintiff plausibly alleges that
11 Gulf Marine unjustly retained the benefit of his work "while not paying him his owed
12 salary" before implementing the new pay plan or "other benefits" during his employment.
13 FAC at ¶¶ 3.4, 3.8, 3.12 (docket no. 15). The motion to dismiss this cause of action is
14 DENIED in part and GRANTED in part.

15       **D.**     **Nonpayment of Wages**

16       Under RCW 49.48.010, "[w]hen any employee shall cease to work for an
17 employer . . . , the wages due to him or her on account of his or her employment shall be
18 paid to him or her at the end of the established pay period." Likewise, under RCW
19 49.52.050, an employer who "willfully and with intent to deprive the employee of any
20 part of his or her wages, shall pay any employee a lower wage than the wage such
21 employer is obligated to pay such employee by . . . contract" shall be guilty of a
22 misdemeanor. RCW 49.52.050(2); *see also* RCW 49.52.070.

23

ORDER - 8

Under RCW 49.46.101(7), incorporated by RCW 49.48.082, "wage" means "compensation due to an employee by reason of employment, payable in legal tender" or "checks on banks convertible into cash."  Although RCW 49.52 does not define "wage," Washington courts have looked to related statutes for guidance.  *See Hayes v. Trulock*, 51 Wn. App. 795, 806, 755 P.2d 830 (1988); *see, e.g.*, *Lietz v. Hansen Law Offices, P.S.C.*, 166 Wn. App. 571, 595, 271 P.3d 899 (2012) (concluding that courts "have construed the phrase 'wages or salary' owed in RCW 49.48.030 to include back pay, front pay, sick leave reimbursement, and commissions").

Again, Plaintiff's allegation that from January 1 through July 1, 2018, Gulf Marine paid him only a quarter of his original salary is sufficient to state a claim under RCW 49.48.010 and RCW 49.52.050(2).  FAC at ¶¶ 3.11–3.12 (docket no. 15).  His allegation that he "is entitled to the payment of benefits which were included in his [o]ffer of [e]mployment, including but not limited to social security, medicare, unemployment insurance, and workman's compensation" also supports a claim under those statutes.  FAC at ¶ 7.6 (docket no. 15); *see Lietz*, 166 Wn. App. at 595.  The motion to dismiss this cause of action is DENIED.

### E. Filing Fraudulent Tax Information

Under 26 U.S.C. § 7434, "[i]f a person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return." *Id.* § 7434(a).  "Although no [circuit court] has addressed the issue, some district courts have concluded that § 7434(a) 'creates a private cause of action only where an information

return is fraudulent with respect to the amount purportedly paid to the plaintiff.'" *Greenwald v. Regency Mgmt. Servs., LLC*, 272 F. Supp. 3d 266, 270 (D. Md. 2019) (quoting *Liverett v. Torres Advanced Enter. Sols. LLC*, 192 F. Supp. 3d 648, 653 (E.D. Va. 2016)). In *Greenwald*, the district court concluded that "W-2 employees" who alleged that their employer "issued them 1099s for commission payments after they left their employment so [the employer] could avoid paying the employer portion of the FICA, FUTA, and other federal and state income taxes" had stated a claim under § 7434(a). *Id.* at 271–72.

Plaintiff alleges that Gulf Marine, "in making the 2016, 2017, and 2018 tax filings," "represent[ed] that [Plaintiff] was an independent contractor when in fact he was an employee." FAC at ¶ 8.3 (docket no. 15). Plaintiff further alleges that the misclassification enabled Gulf Marine to avoid tax liability by failing "to pay one half of the payroll taxes." *Id.*; *see id.* at ¶¶ 3.8, 8.2, 8.4. Those allegations are sufficient to raise a reasonable inference that Gulf Marine willfully filed a fraudulent information return with respect to payments purported to have been made to Plaintiff. *See* 26 U.S.C. § 7434(a); *Greenwald*, 272 F. Supp. 3d at 271–72; *see also Czerw v. Lafayette Storage & Moving Co.*, No. 16-CV-6701-FPG, 2018 WL 5859525, at *3–4 (W.D.N.Y. Nov. 9, 2018) (concluding plaintiff's allegations that the 1099 "inaccurately stated the payments made to him in 2015," and that the employer "misclassified [him] for [that] tax year— despite treating him as an employee," were sufficient to state a claim under § 7434(a)). The motion to dismiss this cause of action is DENIED.

ORDER - 10

### F. Equitable Relief

Recognizing that much of the FAC remains, Plaintiff has, at minimum, plausibly alleged facts supporting his alternate theories of promissory estoppel and breach of the duty of good faith and fair dealing. *See Flower v. T.R.A. Indus., Inc.*, 127 Wn. App. 13, 31, 111 P.3d 1192 (2005); *Malarkey Asphalt Co. v. Wyborney*, 62 Wn. App. 495, 507, 814 P.2d 1219 (1991). The motion to dismiss this cause of action is DENIED.

### G. Attorneys' Fees

As discussed above, Plaintiff has plausibly asserted that he is entitled to attorneys' fees under one or more causes of action.

### H. Dismissal with Prejudice

If the Court dismisses the complaint or portions thereof, it must consider whether to grant leave to amend. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000); *see* Fed. R. Civ. P. 15(a). Again, Plaintiff admits that he was an "at-will" employee of Gulf Marine and that his offer letter was indefinite as to duration. FAC, Ex. 1 (docket no. 15-1); Response (docket no. 17 at 4–7); *see supra* footnote 3. To the extent that Plaintiff seeks damages arising from Gulf Marine's unilateral change to his compensation structure beginning on July 1, 2018, FAC ¶¶ 3.11, 5.4–5.5, 6.2 (docket no. 15), Plaintiff's admission that he was an at-will employee precludes recovery under a breach of contract theory or an unjust enrichment theory as a matter of law, for the reasons explained above. In other words, "any amendment would be futile," and there is "no need to prolong the litigation by permitting further amendment." *Lipton v. Pathogenesis Corp.*, 284 F.3d

ORDER - 11

1027, 1039 (9th Cir. 2002).  The Court therefore dismisses the first and second causes of action in part, with prejudice and without leave to amend.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1)  The motion to dismiss the first cause of action is DENIED in part and GRANTED in part;

(2)  The motion to dismiss the second cause of action is DENIED in part and GRANTED in part;

(3)  The motion to dismiss the third cause of action is DENIED;

(4)  The motion to dismiss the fourth cause of action is DENIED;

(5)  The motion to dismiss the fifth cause of action is DENIED;

(6)  The motion to dismiss the sixth cause of action is DENIED.  *Supra* footnote 2; and

(7)  The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 25th day of September, 2020.

_____
Thomas S. Zilly
United States District Judge

ORDER - 12